# IN THE COURT OF APPEALS OF IOWA

No. 21-1817
Filed March 30, 2022

**IN THE INTEREST OF B.C.-S,**
**Minor Child,**

**A.C., Mother,**
     Appellant.
_____

     Appeal from the Iowa District Court for Marion County, Steven W. Guiter,

District Associate Judge.

     The mother appeals the termination of her parental rights to the child.

**AFFIRMED.**

     Nicholas Einwalter, Des Moines, for appellant mother.

     Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

     Dusty Clements, Newton, attorney and guardian ad litem for minor child.

     Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

The juvenile court terminated the parental rights of the mother and father of this child, who was nine months old at the time of the termination hearing. The mother appeals; the father does not.

On appeal, we conduct a de novo review, which means we are not bound by the juvenile court's fact findings, but we give them weight, especially as to witness credibility. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021). Our review involves a three-step process to determine whether: (1) the State proved a ground for termination; (2) termination is in the child's best interests; and (3) any permissive exceptions should be applied to save the parent-child relationship. *Id.* We do not consider any step a parent does not challenge. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Here, the mother challenges the first and second steps. She also contends she should have been given an additional six months to work toward reunification, which is an option available in the event parental rights are not terminated. *See* Iowa Code § 232.117(5) (2021) (permitting consideration of a permanency option under section 232.104 if rights are not terminated); *see also id.* § 232.104(2)(b) (creating a permanency option of giving a parent an additional six months to eliminate the need for the removal of the child).

I.     **Statutory Grounds**

The mother's rights were terminated pursuant to Iowa Code section 232.116(1)(e) and (h). Although the mother challenges both grounds, we need not address both, as we will affirm if we find any single ground for termination. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We find paragraph (h) sufficient to

resolve this case. That paragraph permits termination of parental rights upon proof that:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother challenges proof of the fourth element only, contending the child could have been returned to her custody at the time of the termination hearing. *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (holding "at the present time" in section 232.116 means at the time of the termination hearing).

The State proved that the child could not be returned to the mother's custody. The child was removed from the mother's custody shortly after the mother tested positive for methamphetamine—less than one week after the child's birth—which was about one month after her parental rights to two other children were terminated.[1] She tested positive for methamphetamine again three months later. After that, she failed to submit to testing, which we consider as positive results. *See In re R.A.*, No. 21-0746, 2021 WL 4891011, at *1 (Iowa Ct. App. Oct. 20, 2021) (collecting cases noting that missed tests are presumed positive for illegal substances). The mother also exhibited signs of impairment when

---

[1] The mother has four other children, and her parental rights to all of them have been terminated. Her rights to the two youngest of those four were terminated due to unresolved methamphetamine issues the month before she gave birth to this child.

interacting with service providers. Those signs included erratic behavior, intense mood swings, visible pupil dilation, forgetfulness, erratic talking pace, and fidgeting.

Her substance-abuse problems are not new. The mother has been losing the battle with addiction for many years. Her unresolved methamphetamine problems convince us that the child cannot be returned to the mother's care now, satisfying the fourth element of section 232.116(1)(h). A child cannot be returned to the custody of a parent under section 232.102 if doing so would expose the child to any harm that would result in a new child-in-need-of-assistance (CINA) adjudication or continuation of an existing adjudication. *See In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988). Methamphetamine use by the parent constitutes sufficient risk of harm. *See A.B.*, 815 N.W.2d at 776 ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children."); *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children.").

Although the mother's unresolved methamphetamine problem is enough by itself to satisfy element four of paragraph (h), there's more. The mother was discharged from a parenting class she was required to attend for lack of participation. She never progressed past supervised visits, and she skipped approximately half of the visits she was offered. The child has not been in her custody at any time since removal shortly after the child's birth.

For these reasons, like the juvenile court, we are convinced the child could not be safely returned to the mother's custody at the time of the termination hearing. The State proved the ground for termination under section 232.116(1)(h).

**II.      Best Interests**

The same reasons the child cannot be returned to the mother's care contribute to our conclusion that termination is in the child's best interests. In addition to the mother's shortcomings, we note that the child is doing well in her foster home and is well bonded to her foster parents. The foster parents intend to adopt. The child's integration into the foster family and the family's willingness to adopt are favorable considerations that further convince us termination of the mother's rights is in the child's best interests. *See In re G.A.*, 826 N.W.2d 125, 131 (Iowa Ct. App. 2012) (noting willingness to adopt as a favorable consideration in assessing whether termination of parental rights is in the child's best interest).

**III.     Additional Time**

Finally, we reject the mother's claim that she should have been given an additional six months to work toward reunification. In order to grant this request, the governing statute requires enumeration of "the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *See* Iowa Code § 232.104(2)(b). We see no such factors, conditions, or expected behavioral changes. The mother's past performance prevents us from believing anything will change significantly in the next six months. *See A.B.*, 815 N.W.2d at 778 (observing that a parent's past performance is indicative of the quality of future care a parent is capable of

providing). As previously noted, the mother's rights to four older children had been terminated by the time of the termination hearing in this case. This demonstrates that the mother's inability to care for her children is a longstanding problem and not one that is going to be fixed in the next six months, especially in light of the minimal to nonexistent progress the mother made during the nine-month span of the underlying CINA proceeding involving this child. The child deserves permanency now, so we decline to give the mother an additional six months to work toward reunification.

## IV. Conclusion

The State established a statutory ground for termination of the mother's parental rights and that termination is in the child's best interests. An additional six months will not eliminate the need for the child's removal from the mother's care. We affirm the juvenile court's ruling terminating the mother's rights to the child.

**AFFIRMED.**